[No. A031614. First Dist., Div. Four. Sept. 19, 1986.]

THE PEOPLE, Plaintiff and Respondent, v.
JOHN W., Defendant and Appellant.

**[Opinion certified for partial publication.\*]**

---

*\*Parts II and III of this opinion are not certified for publication. (See Cal. Rules of Court, rules 976(b) and 976.1.)

COUNSEL

Jonathan M. Purver, under appointment by the Court of Appeal, for Defendant and Appellant.

John K. Van de Kamp, Attorney General, Dane R. Gillette and Linda Ludlow, Deputy Attorneys General, for Plaintiff and Respondent.

OPINION

ANDERSON, P. J.—John W. (appellant) was convicted by a jury of committing a lewd and lascivious act upon a child (Pen. Code, § 288, subd. (a)) and of engaging in an act of unlawful sexual intercourse (Pen. Code, § 261.5). The victim in both counts was appellant's stepdaughter, Leann who was 11 years old at the time the incidents took place. Leann testified that on the night of July 7, 1984, she, her mother and appellant were watching a movie on television when at one point she noticed that appellant had no clothes on. When Leann's mother left the room to go to the bathroom appellant approached Leann, removed her pajama bottoms and underwear and touched her vagina with his hand. Subsequently, appellant engaged in an act of sexual intercourse with Leann.

Appellant argues that his convictions must be reversed because (1) the trial court erroneously excluded testimony of a psychologist that appellant was not a sexual deviant; (2) the jury was improperly instructed with CALJIC No. 2.03 (4th ed. 1979);[1] and (3) the jury was improperly instructed with CALJIC No. 2.51. We find no error and affirm the judgment.

I

*Testimony of Psychologist Properly Excluded*

 During trial appellant sought to introduce the testimony of Dr. Paul Walker, a psychologist licensed in San Francisco who since 1980 had been in a private practice "pretty well limited to deviant or different forms of sexuality." Dr. Walker would have stated that based on two examinations of appellant he had "found no . . . scientific objective data of deviant sexual interest and [could not] recommend any particular form of therapy for his— for his sexuality." Defense counsel offered Dr. Walker's evaluation for the purpose of showing that appellant did not exhibit behavior characteristics

---

[1] All CALJIC instructions referred to are from the fourth edition unless otherwise noted.

consistent with persons who are likely to commit sexual crimes against children, and that therefore, the alleged events concerning Leann did not occur.[2] The trial court excluded this testimony, reasoning that, since reliability of the scientific procedures utilized by Dr. Walker in forming his opinion about appellant's sexuality had not been adequately established (*People* v. *Kelly* (1976) 17 Cal.3d 24 [130 Cal.Rptr. 144, 549 P.2d 1240]), Dr. Walker's evaluation could not be admitted to show whether or not the alleged acts took place as Leann claimed. (*People* v. *Bledsoe* (1984) 36 Cal.3d 236 [203 Cal.Rptr. 450, 681 P.2d 291].)

There were three aspects to Dr. Walker's examination of appellant. The first was a standard psychological interview, aimed at evaluating appellant's "current state of function, his emotional style of relating to the interviewer." The second was the giving of the Minnesota Multiphasic Personality Inventory (the MMPI), a paper and pencil test of 566 true/false questions which "measures 15 different aspects of a person's personality or psychological functioning as well as three other subtests which measure a lie, in case the person is trying to lie, trying to look good, or in some cases people try to look bad." Finally, on two separate occasions, Dr. Walker administered to appellant an electronic physiological test known as a penile plethysmograph (the physical test).

Dr. Walker described the physical test as follows: "This is an electronic device that fits over the man's penis. And he wears it while he views slides of naked women of various ages, one through adulthood. Also [while] he listens to audio tapes. A total of 12 tapes altogether, which vividly describes sexual activity either with an adult or with a child. And there's various tapes. In some tapes the child's sexuality is obviously forced. And in others the child is ostensively consenting, as the child doesn't struggle. And the device measures any changes in the blood flow to the penis, or erection. It can measure erections in percentages, one hundredth of an erection all the way up to a hundred percent of an erection. So it is a physiological measurement of arousal, of sexual arousal, specifically."

It is clear from Dr. Walker's candid responses to questions posed during cross-examination that he had to have based his opinion that appellant was not a sexual deviant primarily on the results of the physical test. While Dr. Walker stated his belief that the MMPI was a reliable test, he conceded that it had never been "standardized in a sexual deviant population." Specifically, he stated that the publishers of the MMPI had not produced any profiles

---

[2]There was also an offer of proof that Dr. Walker would testify that instances of sexual misconduct do not take place in the manner described by Leann. However, appellant expressly states that he does not challenge on appeal the court's ruling as it relates to that testimony.

that one would expect from a person who is suffering from any sexual deviancy, so that the test is not particularly useful as applied to the topic of deviant sexuality. In that regard, he admitted that "the main usefulness [of the MMPI] is whether they were honest or not on the test."

The primary focus of the trial court's inquiry into Dr. Walker's testimony had, therefore, to be the validity of the physical test as a gauge of sexual deviancy. ■ "[A]dmissibility of expert testimony based upon the application of a new scientific technique traditionally involves a two-step process: (1) the *reliability of the method* must be established, usually by expert testimony, and [(]2) the witness furnishing such testimony must be properly *qualified as an expert to give an opinion* on the subject." (*People v. Kelly, supra,* 17 Cal.3d at p. 30 (re: voice print), original italics.) The reliability requirement demands a preliminary showing of general acceptance of the new technique in the relevant scientific community. (*Ibid.*) This requirement "is not fulfilled merely by evidence that one expert personally believes the challenged procedure is reliable; the court must be able to find that the procedure is generally accepted as reliable by the larger scientific community in which it originated." (*People v. Shirley* (1982) 31 Cal.3d 18, 54, fn. 32 [181 Cal.Rptr. 243, 641 P.2d 775] (re: hypnosis); see also *Kelly, supra,* at p. 37.) Finally, it is the proponent of the testimony who has the burden of showing the reliability of the new technique. (*Shirley, supra,* at p. 54.)

■ Based upon these standards, there was clearly no acceptable showing in this case that the physical test was a reliable means of diagnosing sexual deviancy. Dr. Walker testified that it is widely used in many diagnostic and treatment centers which involve sexual offenders, but such a statement does not satisfy the "general acceptance" standard demanded by *Kelly* and its progeny. In fact, Dr. Walker's testimony about his own experience with the test cast grave doubt upon its inherent reliability. He stated that results obtained at Atascadero State Hospital and other treatment centers show that 80 percent of convicted sex offenders tested showed a positive response to the deviant stimuli for which they were convicted. When asked about the remaining 20 percent, he testified "they did not turn on to anything about children, but they also did not turn on to anything about the adults, therefore, you are talking about someone who simply is not turned on by pictures and slides and movies, external stimuli." Walker further testified that appellant was one of the men who fell into this "non-responsive" category: though he was tested twice, he responded to none of the images contained within the test.

Following cross-examination, the court asked Dr. Walker, "is there any body of scientific knowledge or opinion supporting the position that based on either of the two kinds of analyses you performed on a defendant that

you could reliably express an opinion as to whether he did or whether he didn't do anything?" His response was, "Not that directly, no." The court further inquired, "Is there a basis of scientific opinion within the community indicating that the absence of response to stimuli is an indicator or predictor of a lack of propensity to engage in deviant behavior?" To this Dr. Walker replied, "Not quite, since you compare someone to the normal and you give them a test, and you either say that they are different from the normal or we fail to detect a difference. . . . [¶] I know I would not certify as anyone being pure and clean and without a propensity to do an illegal act."

Based on these comments, the fact that Dr. Walker was the only witness called to testify to the general acceptance of the physical test in the scientific community, the doctor's likely bias, being a proponent of the new technique (see *People* v. *Kelly, supra,* 17 Cal.3d at p. 38) and the testimony establishing that fully one-fifth of men given the test had no response at all, there was no error in the trial court's concluding that Dr. Walker's opinion testimony based on the results of the physical test was inadmissible.

Appellant relies on *People* v. *Jones* (1954) 42 Cal.2d 219 [266 P.2d 38] to argue that whether or not the results of the physical test were determined to be unreliable, Dr. Walker's testimony should have been admitted as a matter of law. In *Jones,* a prosecution for lewd and lascivious acts on a child, the Supreme Court ruled that it was error for the trial court to exclude testimony of a psychiatrist that in his opinion the defendant was not a sexual deviate, because the competency of such testimony was established by the statutory procedure which existed at that time for the determination of sexual psychopathy. Moreover, the *Jones* court ruled that such testimony could not be excluded on the ground that the psychiatrist had examined the defendant on one of two occasions with the aid of sodium pentathol, even though it conceded that the admissibility of the results of examinations made while a person is subject to "truth drugs" is questionable.

We consider the rule of *Jones* concerning the competence of expert opinion on sexual psychopathy no longer valid in light of the 1981 repeal of this state's mentally disordered sex offender statutes. (Former Welf. & Inst. Code,[3] §§ 6300-6331; see Stats. 1981, ch. 928, § 2, p. 3485.) Also, we find *Jones* distinguishable insofar as it rules on the admissibility of unreliable evidence.

The key to understanding the *Jones* ruling with regard to the competency of psychiatric opinion is recognizing the court's continual reference to then

---

[3]Unless otherwise indicated all statutory references are to the Welfare and Institutions Code.

sections 5500 through 5516, dealing with sexual psychopaths. The opinion states: "Under the Welfare and Institutions Code, a sexual psychopath may be dealt with as a person who is a menace to the health or safety of others. When one is convicted of a sex offense involving a child under 14 years of age and the crime is a felony, there shall be a subsequent proceeding to determine whether the person is a sexual psychopath. (§ 5501, subd. (c); and cf., also, Welf. & Inst. Code, § 5501, subd. (b), providing for a similar procedure where a second offender is convicted of a misdemeanor.) *The Legislature has concluded that a person who engaged in such conduct upon one occasion has given probable cause for believing that he is a sexual psychopath. . . .* [¶] These statutory provisions concerning those who commit sex offenses *clearly state a legislative determination that such a person is more likely to violate [Penal Code] section 288* than one who has no such propensity; to some extent there is a cause and effect relationship." (*People v. Jones, supra,* 42 Cal.2d at p. 224, italics added.)

The *Jones* court's specific ruling with regard to psychiatric testimony was, "The competency of expert opinion in this field of evidence is *established by the statutory procedure* for the determination of sexual psychopathy. (Welf. & Inst. Code, §§ 5504-5506)."[4] (*People v. Jones, supra,* 42 Cal.2d at p. 225, italics added.) As recognized by the court in *People v. Spigno* (1957) 156 Cal.App.2d 279, 287 [319 P.2d 458], this was an extremely narrow holding. The *Spigno* court emphasized that under former section 5504 the court had to appoint *psychiatrists* to evaluate a defendant's sexual psychopathy; therefore, it ruled the *psychologist* therein fell short of having the necessary qualification or competency to testify as an expert

---

[4]In 1954 sections 5504 through 5506 read as follows: "5504. The judge shall appoint not less than two nor more than three psychiatrists, each of whom shall be a holder of a valid and unrevoked physician's and surgeon's certificate who has directed his professional practice primarily to the diagnosis and treatment of mental and nervous disorders for a period of not less than five years, and at least one of whom shall be from the medical staff of a State hospital or county psychopathic hospital, to make a personal examination of the alleged sexual psychopath, directed toward ascertaining whether the person is a sexual psychopath.

"5505. Each psychiatrist so appointed shall file with the court a separate written report of the result of his examination, together with his conclusions and recommendations. At the hearing each psychiatrist shall hear the testimony of all witnesses, and shall testify as to the result of his examination, and to any other pertinent facts within his knowledge.

"5506. Any psychiatrist so appointed by the court may be called by either party to the proceeding or by the court itself and when so called shall be subject to all legal objections as to competency and bias and as to qualification as an expert. When called by the court, or by either party to the proceeding, the court may examine the psychiatrist, as deemed necessary, but either party shall have the same right to object to the questions asked by the court and the evidence adduced as though the psychiatrist were a witness for the adverse party. When the psychiatrist is called and examined by the court the parties may cross-examine him in the order directed by the court. When called by either party to the proceeding the adverse party may examine him the same as in the case of any other witness called by such party." (Stats. 1939, ch. 447, § 1, pp. 1784-1785; Stats. 1952, 1st Ex. Sess., ch. 24, § 7, p. 385.)

concerning the sexual psychopathy of the defendant. (*Id.*, at p. 288.) Illustrative of what was recognized in *Spigno* as the special, statutorily recognized competence of psychiatrists to testify about a defendant's sexual psychopathy is the statement, "If we assume for the moment that the rule of the *Jones* case, *to the effect that only a psychiatrist can testify in such matters*, does not apply, it appears that there ought to have been a showing of *at least a semblance of scientific acceptance of the psychologist's ability to formulate a dependable conclusion* under all of the circumstances of the case." (*Ibid.*, italics added.)

In citing *Jones* for the proposition that Dr. Walker's testimony was admissible as a matter of law, appellant ignores the fact that the statutes from which the Supreme Court derived the competency of such expert testimony in 1954 *no longer exist* in 1986. While the language of former sections 5504 through 5506 was carried forth substantially in sections 6307 through 6309 (see Stats. 1967, ch. 1667, § 37, p. 4107), sections 6300 through 6331 (the mentally disordered sex offender statutes) were repealed in 1981. (Stats. 1981, ch. 928, § 2, p. 3485.) ■ Contrary to the finding in *Jones* of a legislative determination that sexual psychopaths were more likely to commit lewd acts against children than persons with no such propensity— that "to some extent there is a cause and effect relationship" (*People* v. *Jones, supra,* 42 Cal.2d at p. 224)—"In repealing the mentally disordered sex offender commitment, the Legislature recognize[d] and declare[d] that *the commission of sex offenses is not in itself the product of mental diseases.*" (Stats. 1981, ch. 928, § 4, p. 3486, italics added.) The competency of expert opinion in the field of sexual deviance is no longer established by any statutory procedure.

While *Jones* held that the psychiatrist's testimony was not made inadmissible by the fact that he had made use of an unreliable "truth drug" in examining the defendant, the court therein expressly found that "the proffered evidence was not the answers of [the defendant] to certain questions, but the interrogator's expert analysis of those answers for the purpose of determining whether [the defendant] was a sexual deviate. . . ." (*People* v. *Jones, supra,* 42 Cal.2d at p. 226.) ■ "While in California such statements [made as the result of an unreliable technique] may be used to establish a basis for expert opinion, the cases either state specifically or assume that they are not admissible to prove the truth of the matter therein contained." (*People* v. *Blair* (1979) 25 Cal.3d 640, 665 [159 Cal.Rptr. 818, 602 P.2d 738].) In this case it is clear that the results of the physical test are taken as "statements" of the examinee's sexual preference and would have been introduced for the proof of the matter asserted—that appellant had no abnormal sexual impulses. Therefore, Dr. Walker's opinion as to appellant's

sexuality was inadmissible as the direct product of a legally unreliable scientific technique.

## II, III*

. . . . . . . . . . . . . . . . . . . . . . .

The judgment is affirmed.

Channell, J., and Sabraw, J., concurred.

---

*Parts II and III of this opinion are not certified for publication. (See fn., *ante*, at p. 801.)