[No. A044379. First Dist., Div. One. Aug. 15, 1990.]

THE PEOPLE, Plaintiff and Respondent, v.
JOAQUIN RUIZ, JR., Defendant and Appellant.

COUNSEL

Neoma Kenwood, under appointment by the Court of Appeal, for Defendant and Appellant.

John K. Van de Kamp, Attorney General, Richard B. Iglehart, Chief Assistant Attorney General, John H. Sugiyama, Assistant Attorney General, Martin S. Kaye and Mary A. Roth, Deputy Attorneys General, for Plaintiff and Respondent.

OPINION

STEIN, J.—Joaquin Ruiz, Jr., appeals his conviction of a single count of lewd conduct with a child. (Pen. Code, § 288, subd. (a).)

FACTS

The 10-year-old victim, Catherine W., was a neighbor and friend of Ruiz's granddaughter. Catherine, looking for her friend, found Ruiz baby-

sitting for the family's two younger children. Ruiz invited her into the house to watch television with him and the children. Catherine testified that Ruiz spoke to her about sex, had her sit with him on a chair where he touched her sexually and put her hand on his penis.

 Ruiz does not contend that there was insufficient evidence to support his conviction; rather he claims that he was denied a fair trial because the court refused to permit his expert witness to testify that Ruiz did not share certain characteristics commonly shared by pedophiles.

I

*The Exclusion of the Offered Testimony*
*of the Defense's Expert Witness*

The defense sought to introduce evidence that Ruiz did not share characteristics commonly associated with persons suffering from pedophilia. The defense made an offer of proof that Dr. Paul S. D. Berg, a psychologist with extensive experience in examining and treating pedophiles, would testify that there are two primary types of pedophiles, one who becomes "fixed . . . stuck on urges that have to do with sexual pleasure with children," and a "regressive" type which, upon undergoing some unusual stress, decompensates and acts out sexually. Dr. Berg had examined Ruiz and had administered to him several standard psychological tests, including the Minnesota multiphasic personality inventory (MMPI), the Millon clinical multiaxial inventory (MCMI), a sentence completion test and the Bender gestalt test. Dr. Berg stated that the tests administered were not designed to determine if the subject being tested was a pedophile or sexual deviant, but further stated that the results of the tests, plus his own examination, caused him to form the opinion that Ruiz did not "fit the typical pattern of those people who are known and diagnosed and treated as pedophiles." "I can describe what he's like psychologically, I can give you opinions about mental functioning, I can certainly tell you whether or not he fits in or outside of categories; but I regard the specific question as a legal determination and not a psychological one." Dr. Berg further stated that barring an admission by a subject that he was a pedophile, he would never be able to say whether or not a particular patient was a pedophile, "but I can tell you, again, based on my clinical experience, that they tend to produce certain kinds of profiles, and other folks do not." The court, citing *People* v. *John W.* (1986) 185 Cal.App.3d 801, 806-808 [229 Cal.Rptr. 783], held the proffered testimony inadmissible.

 It is now settled that psychological opinions based upon personal examination and an analysis of accepted psychological tests, such as the

MMPI and MCMI, may be admitted as character evidence tending to show that an individual was or was not likely to have committed a particular act, and that the admissibility of such evidence need not be tested under the *Kelly-Frye* standard. (*People v. Kelly* (1976) 17 Cal.3d 24 [130 Cal.Rptr. 144, 549 P.2d 1240]; *Frye v. United States* (1923) 293 Fed. 1013 [54 App.D.C. 46, 34 A.L.R. 145].)[1] In *People v. Stoll* (1989) 49 Cal.3d 1136 [265 Cal.Rptr. 111, 783 P.2d 698], a defendant charged with sexually molesting children sought to introduce into evidence a psychiatrist's opinion that she had a "normal personality function," that she had not in the past engaged in sexual deviancy of any kind, and that it was " 'unlikely . . . she would be involved in the events *she's been charged with.*' " (*Id.* at p. 1149, italics in original.) Noting that the opinion had been formed on the basis of the psychiatrist's individual interpretation of the test and interview results, and that the tests at issue were long accepted and thus were not a new scientific technique, the court found the evidence admissible.

Further, in finding the opinion evidence at issue admissible, the court in *Stoll* distinguished *People v. John W., supra,* 185 Cal.App.3d 801, relied upon by the trial court in the instant case, because one of the tests relied upon by the psychologist in that case was ' "an electronic physiological test known as a penile plethysmograph,' " a test which, unlike the MMPI and MCMI, involved a new scientific technique and therefore fell within the *Kelly-Frye* rules. (*People v. Stoll, supra,* 49 Cal.3d at pp. 1159-1160, fn. 21.) The court also found inapplicable the holding of *People v. Bledsoe* (1984) 36 Cal.3d 236 [203 Cal.Rptr. 450, 681 P.2d 291], insofar as that case prohibits the use of expert opinion that a victim suffered from "rape trauma syndrome" for the purpose of proving that a rape in fact occurred: "A careful reading of *Bledsoe* reveals that our primary concern was the logical irrelevance of the evidence: (1) the 'syndrome' was designed solely as a nonjudgmental means by which to 'identify, predict and treat' the victim's emotional problems; (2) since counselors rarely question the victim's factual account, the syndrome is an inappropriate means of deciding the intricate *legal* issue of consent (i.e., whether the defendant reasonably, and in good faith believed that the victim consented *despite her good faith belief that she did not*); and (3) the syndrome is characterized by a 'broad range of emotional trauma' not limited to victims of rape; and (4) a counselor's assessment of the *victim's* feelings is not necessarily an accurate measure of whether *a third party*, namely the defendant, acted in a legally culpable

---

[1] "[A]dmissibility of expert testimony based upon the application of a new scientific technique traditionally involves a two-step process: (1) the *reliability of the method* must be established, usually by expert testimony, and (2) the witness furnishing such testimony must be properly *qualified as an expert to give an opinion* on the subject." (*People v. Kelly, supra,* 17 Cal.3d at p. 30, italics in original.)

manner. (36 Cal.3d at pp. 249-250, & fn. 12.)" (*People* v. *Stoll, supra,* 49 Cal.3d at pp. 1160-1161, italics in original.)

In the present case there was no evidence that the tests administered by Dr. Berg are used in the scientific community for any purpose other than to "identify, predict and treat" a patient's emotional problems. There was no evidence that Dr. Berg questioned Ruiz's factual statements, or that he questioned anything Ruiz related. Additionally, Dr. Berg testified that the types of pedophilia he described were but the two "primary" types. Accordingly, the reliability of the material upon which Dr. Berg based his opinion seems questionable, as does its relevance to the issue of guilt. Nonetheless, the tests at issue are similar to those administered in *People* v. *Stoll* and, like that of the expert in *Stoll,* Dr. Berg's opinion was based not only on the test results, but on a personal examination. It follows that in the present situation, Ruiz was entitled to have Dr. Berg state his opinion that Ruiz was not a sexual deviant, or was not a pedophile, or was not likely to have committed the charged acts.

Dr. Berg apparently had no intention of stating an opinion on any of these matters. Rather, he planned to testify that Ruiz did not have the psychological characteristics of a person suffering from pedophilia; i.e., that he did not match the profile of a pedophile.

*Stoll* does not hold that such "profile" evidence is admissible. Rather, the court carefully limited its holding, emphasizing that the psychiatrist in that case had indicated that "no psychological 'profile' entered into his diagnosis." Instead, the psychiatrist would emphasize that the defendant showed " 'low indication for antisocial or aggressive behavior,' " implying that she "is 'unlikely' to commit the charged acts or any serious crime." (*People* v. *Stoll, supra,* 49 Cal.3d at p. 1153.)

Nonetheless, we see little reason to distinguish between the material underlying the expert's opinion in *Stoll* and the type of "profile" evidence underlying Dr. Berg's opinion in the present case. It is difficult to comprehend how a psychologist or psychiatrist could opine that a particular person is not a sexual deviant or pedophile without comparing the results of the expert's examination (including the results of any standardized test administered) with the results of similar tests on persons who were sexual deviants or pedophiles; i.e., with profile evidence. Indeed, the court in *Stoll* left open the possibility that profile evidence might be admissible. "We are not persuaded that juries are incapable of evaluating properly presented references to psychological 'profiles' and 'syndromes.' " (*People* v. *Stoll, supra,* 49 Cal.3d at p. 1161, fn. 22.)

Still, it is not enough to determine that certain material—here, profile evidence—*might* be admissible. Evidence Code section 801, subdivision (b)

requires that the matter underlying an expert's opinion be "of a type that reasonably may be relied upon by an expert in forming an opinion upon the subject to which his testimony relates." Thus there must be some showing that the material on which the expert bases his or her opinion—here the profiles of the primary types of pedophile—is reliable.

As discussed, *ante,* there was no such showing in the present case. There was no evidence that the scientific community had developed any standard profile of a pedophile. Indeed, Dr. Berg explained that the tests he used were *not* designed to elicit that information and had *not* been standardized against a population group of pedophiles. Dr. Berg said that the disorder usually manifests itself in persons who have become fixated on children or on persons who have experienced some recent stress, but there was no showing that Dr. Berg was stating anything other than his personal opinion, nor was there any showing that his personal opinion in such matters was reliable.

It is not, however, unlikely that the inadequacy of the showing resulted more from the confusing state of the law than from the inability of Ruiz to establish facts meeting the requirements of *People* v. *Stoll, supra,* 49 Cal.3d 1136, and Evidence Code section 801. The interests of justice thus best will be served by permitting Ruiz the opportunity to make such a showing now that *People* v. *Stoll* has clarified the law. A party should not be penalized for not appreciating a point which was unsettled at the time of trial. (*Beck* v. *Arthur Murray, Inc.* (1966) 245 Cal.App.2d 976, 983 [54 Cal.Rptr. 328].)

In light of the principles stated in this opinion and in the opinion of *People* v. *Stoll, supra,* 49 Cal.3d 1136, we reverse the judgment and remand the matter for a new foundational hearing on the admissibility of the opinion of Ruiz's expert. If the trial court again determines that the testimony is inadmissible, the court is directed to reinstate the the judgment of conviction previously rendered. If the trial court determines that the expert testimony is admissible, it is directed to conduct appropriate further proceedings.

Racanelli, P. J., and Newsom, J., concurred.

A petition for a rehearing was denied September 14, 1990, and the opinion was modified on September 14, 1990, and October 12, 1990, to read as printed above.