[No. D014928. Fourth Dist., Div. One. June 15, 1992.]

In re MARK C., a Person Coming Under the Juvenile Court Law.
SAN DIEGO COUNTY DEPARTMENT OF SOCIAL SERVICES,
Plaintiff and Respondent, v.
DAVID C., Defendant and Appellant.

[Opinion certified for partial publication.[1]]

---

[1]Pursuant to California Rules of Court, rule 976.1, this opinion is certified for publication with the exception of part II.

**COUNSEL**

David J. Wayman, under appointment by the Court of Appeal, for Defendant and Appellant.

Lloyd M. Harmon, Jr., County Counsel, Susan Strom, Chief Deputy County Counsel, and Terri L. Richardson, Deputy County Counsel, for Plaintiff and Respondent.

Carl Fabian, under appointment by the Court of Appeal, for Minor.

**OPINION**

**HUFFMAN, J.**—David C., father of the minor Mark C. (Father), appeals the order of the juvenile court declaring four-year-old Mark to be a dependent child of the juvenile court and placing him with his mother, Teresa H., Father's former wife. (Welf. & Inst. Code, § 300, subds. (d) and (j).)[2] In making a true finding upon the dependency petition, the court sustained allegations under section 300, subdivision (d), that Mark had been sexually abused by Father, and also under section 300, subdivision (j), that Father had sexually abused Mark's nine-year-old half sister, Jennifer.[3] Father's main argument on appeal is that certain expert psychological testimony was improperly excluded by the juvenile court, pursuant to a motion *in limine* brought by the plaintiff department of social services (the Department). Our discussion of this claim requires us to examine the nature of character evidence that may properly be allowed in dependency proceedings. (Evid. Code, § 1100 et seq.)

In addition to the evidentiary arguments made by Father, he claims he was prejudiced when the juvenile court allowed the dependency petition to be amended during trial to conform to proof regarding the dates and nature of the alleged conduct. Father also argues insufficient evidence supports the

---

[2]All statutory references are to the Welfare and Institutions Code unless otherwise specified.

[3]Jennifer is not a party to this action as she and Father had no legal relationship and there was no need for a dependency petition.

jurisdictional and dispositional orders made. The record sufficiently supports the orders. We affirm.

## Factual and Procedural Background

In January 1991, when the dependency petition was filed, Mark was four years old. His parents had been separated and later divorced for three years, and Mark lived with his mother and had visitation with his father every other weekend. Mark's half sister, Jennifer, age nine, also resided with his mother, and accompanied Mark on occasional weekend visitations with Father.

As originally pled, count 1 of the petition alleged that Mark needed the protection of the juvenile court because on or before September 1, 1989, through December 23, 1990, Father had subjected him to sexual abuse, including, but not limited to, performing oral copulation on Mark and masturbating in front of him. At trial, that count was amended to extend the beginning date from September 1, 1989, to January 1988, and to delete the oral copulation allegation and insert the language "touching the minor's genitals with his hand, penis and mouth."

Count 2 of the petition was pled as a sibling allegation under section 300, subdivision (j), stating that Mark was at risk of sexual abuse by Father because his half sister, Jennifer, had been sexually abused by Father (fondling her vaginal area over her underwear) between September 1, 1989, and September 30, 1989. At trial, the beginning date of that time period was amended to read January 1986.

According to an evidentiary interview summary prepared by a social worker for the center for child protection, attached to the social study prepared for the jurisdictional hearing, Mark's mother became aware on Christmas Day 1990 of the possibility he had been sexually abused by his father. While they were waiting for his father to pick him up for visitation, Mark told his mother that he always sleeps with his grandmother, with whom his father lived, because he did not want to sleep with his father anymore. When his mother asked him why, Mark replied it was because "Daddy plays with his thing," pointing to the genital area. Later, Mark told the interviewing social worker that his father used to kiss Mark's "peepee" (Mark's term for penis), and also kissed Mark's bottom. Mark demonstrated this conduct with the use of anatomically correct dolls. Mark also described his father putting his finger in Mark's anus. He denied that any other person had engaged in this type of activity with him. A videotape was made of the evidentiary interview. A medical evaluation resulted in normal findings.

After social workers began interviewing Mark and his mother, Mark's half sister Jennifer was also interviewed by social workers and reported that

Father had touched her genital area above and beneath her clothing. Jennifer made the same statements to her mother. Jennifer described an incident occurring a day before her eighth birthday when she and Mark were visiting at Father's home overnight and Jennifer was left alone in the house with Father. He first patted her over her clothing in her vaginal area and, when she objected and went upstairs, followed her, apologized and asked to rub her stomach. He then pulled up her shirt as she was lying on a bed, began to rub her stomach, and then slid his hand down her underwear and touched her vagina. Jennifer kicked him in the groin, ran downstairs, and hid. When Mark and his grandmother arrived shortly thereafter, Father acted as if nothing had happened. Jennifer told the interviewing social worker she had not told about this incident sooner because she had been afraid, since Father told her not to tell "or else," which she interpreted as meaning that he would beat her. Jennifer stated she had seen Father rubbing Mark's private area when Mark was about three years old.

Father denied the allegations of the petition, and the matter was set for a contested jurisdictional hearing. Before testimony was taken, the Department's counsel made a motion *in limine* to exclude certain expert testimony concerning psychological and physiological testing that Father was expected to present on the issue of his propensity to molest children. The motion described the anticipated evidence as possibly including psychological evaluation, results of a penile plethysmograph test (a test involving an electronic device used to monitor sexual arousal in response to the viewing of slides of naked women and children of various ages involved in various types of sexual activity) (the arousal test), as well as various sexual inventory and diagnostic tests. In the points and authorities in support of the motion, the Department argued Father would improperly be attempting to use this material as character evidence to show that he lacks the propensity to molest children, and to establish that he acted in conformity with that character in support of his position that he did not abuse the children. Father did not file any written opposition to the motion nor any written offer of proof.

The motion *in limine* was orally argued at the outset of the contested jurisdictional hearing. Father stated the expert testimony which he wished to present from psychologist Larry Corrigan had a substantial basis in the arousal test and in 33 other standardized tests which had been conducted. He claimed that the expert testimony was offered only to show there was no future substantial risk to Mark because of any sibling abuse within the meaning of section 300, subdivision (j), and he did not intend to argue it was probative as to whether past acts of sexual conduct had occurred. Father's position was that even if the evidence showed that Jennifer had been sexually abused by Father, "based upon who this individual is," Father posed

no substantial risk to Mark. According to Father, the expert evidence would show there was no nexus between what may have happened to Jennifer and what might happen to Mark in the future. In conclusion, Father pointed out that the juvenile court routinely reviewed psychological evaluations of parents to predict future risk to children if they should be sent home. The court responded that such review was not undertaken "for jurisdictional purposes."

In rebuttal, the Department's attorney argued that the proposed evidence would be inadmissible either to show that prior acts occurred or to show that Father would likely act in conformance with the behavior which he demonstrated at testing, i.e., that he had no propensity to molest children. (Evid. Code, § 1101, subd. (a).) The Department also argued that the arousal test had not been shown to be a reliable basis for expert opinion. The court granted the motion *in limine* to exclude the proposed expert testimony as to any matters in the case.

Testimony was then taken from Mark, who demonstrated a great deal of uncertainty as to whether he knew the difference between truth and lies. The court took that uncertainty into account in evaluating Mark's sworn testimony. Mark then denied that anything had happened with his father or that any touching occurred. He also did not remember reporting the touchings to the interviewing social workers. A letter from Mark's therapist was admitted into evidence, reporting Mark's complaints about "yucky" things being asked of him by his father.

Jennifer testified, stating she stopped visiting Father when she was eight years old because he did "bad things" to her. She said Father had touched her private parts about 10 times before the incident around the time of her eighth birthday, beginning when she was 5 years old. She testified that Father was wearing underwear during some of these incidents, and that she saw Father touch Mark's private areas with his hand or penis beginning when Mark was in diapers, about 10 times total. She stated that Mark's grandmother, Father's own mother (Grandmother), had witnessed Father's touching of both Mark and Jennifer and had told him to stop.

At the close of the Department's case, the petition was amended to change the beginning dates of the allegations in counts 1 and 2 as indicated above. Father objected to the amendment on due process grounds, claiming that his defense had been prepared to meet only the dates as pled, and that his cross-examination of the children had been conducted with those dates in mind. When offered a recess to consult with his client, or the opportunity to recall Jennifer as a witness, Father's attorney declined.

Father then called his ex-wife, Mark's and Jennifer's mother (Mother), as an adverse witness. (Evid. Code, § 776.) She testified about a number of overnight visits which the children had had with Father, and stated that Father never wore underwear during the time that she knew him. She brought an order to show cause against Father in September 1990 regarding nonpayment of child support, but was unsuccessful in that court proceeding. She stated that beginning in October or November of 1990 Mark did not want to go visit his father. Since Mother and Father had separated, Jennifer had suffered emotional problems, including bed-wetting which did not stop until January 1991.

In Father's testimony, he denied he had sexually molested either child; he confirmed he does not wear or own underwear. He suggested that Mother was upset after the unsuccessful child support family court proceeding. According to Father, Grandmother was always present when he was with the children. Mark normally slept with Grandmother during visitation and, although Mark had slept with Father once when he was sick, Father had his jeans on that night.

Grandmother testified that she did not leave Jennifer alone with Father around the time of the birthday, and that she never saw Father sexually touch Mark or Jennifer. Although there had been one time when Jennifer slept with Father in the same bed, Father was wearing his jeans that night. She testified that beginning in October 1990 Mark seemed rather cool to his father, but would warm up to him over the weekend visitation period.

In his closing argument, Father's attorney suggested that Mark seemed distant toward Father in the fall of 1990, after Mother had been unsuccessful in her child support proceedings and had possibly conveyed her distress to Mark. In general, Father's defense was based on denial that the incidents had occurred and arguments that Jennifer's testimony was inconsistent with that of the adults involved.

In its ruling, the juvenile court sustained both counts of the petition, finding that a preponderance of the evidence supported them. At the dispositional proceedings, Father expressed his disagreement with the jurisdictional finding, and requested that the existing family court custody orders remain in place. No further effort to admit the expert testimony was made at the dispositional hearing. The court removed custody from Father under section 361, subdivision (b), without specifying which statutory subdivision it used, and placed Mark with his mother.

Father timely appealed the jurisdictional and dispositional orders.

## DISCUSSION

We first address Father's argument that the juvenile court's exclusion of the expert psychological testimony was improper under section 300, subdivision (j), because it would have been probative of whether any substantial risk to Mark was posed due to any molestation of Jennifer. We also consider Father's alternative argument that this testimony would be proper character evidence under Evidence Code section 1101. In conclusion, we shall discuss Father's remaining contentions: the amendment of the petition during trial was prejudicial, and insufficient evidence supports the jurisdictional and dispositional orders.

### I

Before we discuss Father's arguments in detail, we first find it necessary to note that because the court made a true finding as to the allegation under section 300, subdivision (d) that Mark himself had been sexually abused, the evidentiary issues raised about the admissibility of expert testimony concerning the sibling allegation of the petition (§ 300, subd. (j)), may be considered to be moot; there is an independent basis in section 300, subdivision (d) on which we may affirm these orders. ■ However, the issues raised concerning the admissibility of character evidence in dependency proceedings, particularly with reference to sibling petitions under section 300, subdivision (j), are matters of broad public interest that are likely to recur, justifying the exercise of this court's discretion to resolve them even if in the particular case they would normally be rendered moot. (*In re William M.* (1970) 3 Cal.3d 16, 23 [89 Cal.Rptr. 33, 473 P.2d 737].) "[W]e should not avoid the resolution of important and well litigated controversies arising from situations which are 'capable of repetition, yet evading review.' [Citations.]" (*Id.* at p. 23, fn. 14.)

■ Father's contention that the expert testimony and the proposed basis of that testimony (i.e., the arousal test and the 33 standardized sexual inventory and diagnostic tests) should have been admitted is based chiefly on section 300, subdivision (j). That subdivision requires the court to make a determination at the jurisdictional stage of the proceedings as to whether there is a substantial risk to the minor who is the subject of the petition because of abuse or neglect of the minor's sibling. In particular, section 300, subdivision (j) provides for the following procedure:

"The court *shall consider* the circumstances surrounding the abuse or neglect of the sibling, the age and gender of each child, the nature of the abuse or neglect of the sibling, *the mental condition of the parent or guardian, and any other factors the court considers probative in determining whether there is a substantial risk to the minor*." (Italics added.)

Citing *People* v. *Stark* (1989) 213 Cal.App.3d 107, 113-114 [261 Cal.Rptr. 479], Father relies on the general rule under Evidence Code section 801, subdivision (a) that expert opinion is allowed in court proceedings "when it is desirable or helpful rather than restrict[ed] only to situations where it is absolutely necessary." Father argues the proposed expert testimony would have been helpful to the substantial risk determination here. He also claims he was not given an adequate opportunity to lay a foundation for the proposed testimony in order to show that the opinion would have a basis considered to be reliable in the psychological field of expertise. (*People* v. *Ruiz* (1990) 222 Cal.App.3d 1241, 1245-1246 [272 Cal.Rptr. 368].) Although Father conceded at trial that the physiological arousal test used would be subject to *Kelly/Frye*[4] standards requiring a showing of scientific acceptance of the particular procedure or test, he argues that under *People* v. *Stoll* (1989) 49 Cal.3d 1136, 1154-1159 [265 Cal.Rptr. 111, 783 P.2d 698], the standardized psychological tests used to form the basis for expert mental health testimony need not be subject to evaluation under *Kelly/Frye* standards. (Also see *People* v. *John W.* (1986) 185 Cal.App.3d 801, 804-809 [229 Cal.Rptr. 783] (disapproved on another point in *Stoll, supra,* 49 Cal.3d at p. 1153, fn. 18.) Accordingly, he claims, the court erred in excluding all the expert testimony.

In the alternative, Father contends this expert testimony should have been admitted as character evidence under Evidence Code section 1100 et seq., even though dependency proceedings are predominantly civil in nature, because as character evidence it would be used to help the court determine parental fitness, i.e., whether Father had a predisposition or propensity toward future sexual abuse of Mark. (*In re Dorothy I.* (1984) 162 Cal.App.3d 1154, 1158-1159 [209 Cal.Rptr. 5].)

To address these arguments, we first outline the general exclusionary rule for character evidence to prove conduct on a specified occasion. (Evid. Code, § 1101, subd. (a).) We then discuss a recognized exception to this rule: where parental character is itself in issue in a dependency matter. (*In re Dorothy I., supra,* 162 Cal.App.3d 1154, 1158-1159; see 1 Witkin, Cal. Evidence (3d ed. 1986) Circumstantial Evidence, § 329, pp. 301-302.) We then analyze the extent to which ordinarily applicable evidentiary restrictions, such as an adequate foundational showing for the proffered evidence, were complied with here.

The general exclusionary rule for character evidence in a civil case appears in Evidence Code section 1101, subdivision (a), providing in pertinent part:

---

[4] *People* v. *Kelly* (1976) 17 Cal.3d 24 [130 Cal.Rptr. 144, 549 P.2d 1240]; *Frye* v. *United States* (D.C. Cir. 1923) 293 F. 1013 (hereafter *Kelly/Frye*).

"[E]vidence of a person's character or a trait of his or her character (whether in the form of an opinion, evidence of reputation, or evidence of specific instances of his or her conduct) is inadmissible when offered to prove his or her conduct on a specified occasion." (See 1 Witkin, *op. cit. supra*, § 325, p. 299.)[5]

This rule has been applied in the juvenile dependency context to disallow the use of inferences drawn by an expert psychiatrist, from standardized psychological tests of an allegedly offending father, in order to form a conclusion that the father "had a character trait, a propensity to sexually abuse children, and acted in conformance with that propensity in this instance by sexually abusing his daughter." (*In re Cheryl H.* (1984) 153 Cal.App.3d 1098, 1123 [200 Cal.Rptr. 789].) Such an inference is prohibited by section 1101 of the Evidence Code, banning character evidence in civil cases. (*In re Cheryl H., supra*, at pp. 1123-1124.) Thus, such expert opinion could not be used in support of a trial court finding that the father had sexually abused his daughter. (*Id.* at p. 1125.)

Distinguishing *In re Cheryl H., supra*, 153 Cal.App.3d 1098, Father argues that the expert evidence he had gathered was admissible under section 300, subdivision (j), as probative that there was no "substantial risk that the minor will be abused or neglected," based upon abuse of the sibling. To make the substantial risk determination, he points out, the court is directed to "consider the circumstances surrounding the abuse or neglect of the sibling, . . . *the mental condition of the parent or guardian*, and any other factors the court considers probative." (§ 300, subd. (j), italics added.) We agree that the terms of this subdivision necessarily imply that in evaluating risk to the child at the jurisdictional hearing, the juvenile court may consider the propensities or predispositions of the parent (i.e., his or her character) in order to determine if he or she is likely to act in conformity therewith in the future toward another child. By enacting section 300, subdivision (j) as an alternative basis for jurisdiction over a dependent child, the Legislature apparently intended to place the parent's character in issue to some extent. (See *Feist* v. *Feist* (1965) 236 Cal.App.2d 433, 436 [46 Cal.Rptr. 93]: fitness of a parent is in issue in dissolution custody matters.)

[5]Evidence Code section 1101, subdivision (a) provides for exceptions to the general exclusionary rule, such as those set forth in Evidence Code sections 1102 and 1103, allowing the character of a defendant or a victim to be proved in a criminal case under specified conditions. (See *People* v. *Stoll, supra*, 49 Cal.3d 1136.) The provision of Evidence Code sections 1102 and 1103 have not, however, been extended to juvenile dependency matters. Nevertheless, the conclusions in *Stoll* regarding the general inapplicability of *Kelly/Frye* requirements to standardized psychological tests that are used to form the basis of a mental health professional's opinion do appear to be of general applicability in either criminal or dependency matters. (*People* v. *Stoll, supra*, 49 Cal.3d at pp. 1154-1159.)

The court in *In re Dorothy I.*, *supra*, 162 Cal.App.3d 1154, 1159, an opinion written three years before section 300, subdivision (j), was added, reached a similar conclusion. There, the court held that psychiatric opinion evidence of risk to a minor posed by her father's abuse of a sibling was admissible. Distinguishing *In re Cheryl H.*, *supra*, 153 Cal.App.3d 1098, 1123-1124, the court said the psychiatric evidence was not being improperly used to prove a charge of past conduct against the father, "but is being used in helping the court determine his predisposition toward future sexual abuse with the minor." (*In re Dorothy I.*, *supra*, at p. 1159.) The court stated there was a specific statutory basis for the admissibility of that evidence in former section 355.5 (now § 355.1, subd. (b)), which in both forms reads as follows:

"Proof that either parent . . . who has the care or custody of a minor who is the subject of a petition filed under Section 300, has physically abused, neglected, or cruelly treated another minor shall be admissible in evidence." The court concluded, "This type of character evidence is essential, when available, to aid the court in dependency actions, which are concerned with the future well-being of a minor." (*In re Dorothy I.*, *supra*, 162 Cal.App.3d at p. 1159.)[6]

In contrast, we are presented with the issue of whether a different type of character evidence (i.e., expert testimony concerning a parent's general propensity toward future sexual abuse) is admissible regarding jurisdiction in dependency matters on the theory that it might aid the court in promoting the future well-being of a minor. Unlike the testimony in *In re Dorothy I.*, *supra*, 162 Cal.App.3d 1154, such evidence is not claimed to have any special statutory authorization such as section 355.1. Although we believe that in principle such evidence is admissible at the jurisdictional hearing under section 300, subdivision (j) on the issue of the parent's mental condition, in this case the rules regarding expert testimony and its required foundation prevent any conclusion that this evidence should have been admitted here. We explain.

The overriding rule on review is stated in Evidence Code section 354, subdivision (a): A judgment shall not be reversed by reason of erroneous

---

[6]We question the assumption by the court in *In re Dorothy I.*, *supra*, 162 Cal.App.3d 1154, 1158-1159, that former section 355.5 (now § 355.1, subd. (b)), referring to proof of abuse of another child, actually authorized the admission of psychiatric opinion testimony based on those facts. We interpret section 355.1, subd. (b) as establishing the admissibility of direct evidence of incidents of abuse (see *In re Edward C.* (1981) 126 Cal.App.3d 193, 202-203 [178 Cal.Rptr. 694]), rather than authorizing opinion testimony based upon such direct evidence. However, even accepting the characterization of the evidence in *Dorothy*, we find that case to be distinguishable; the expert evidence there was directly linked to the proof of sibling abuse. Here, although the expert testimony was to be offered in connection with the sibling allegation, there was no showing that the actual tests conducted referred in any way to proof of the sibling abuse.

exclusion of evidence unless a miscarriage of justice is shown and it appears of record that "[t]he substance, purpose, and relevance of the excluded evidence was made known to the court by the questions asked, an offer of proof, or by any other means . . ." (Evid. Code, § 354, subd. (a).)

"The substance of evidence to be set forth in a valid offer of proof means the testimony of specific witnesses, writings, material objects, or other things presented to the senses, to be introduced to prove the existence or nonexistence of a fact in issue." (*United Sav. & Loan Assn.* v. *Reeder Dev. Corp.* (1976) 57 Cal.App.3d 282, 294 [129 Cal.Rptr. 113]; see 3 Witkin, *op. cit. supra*, Introduction of Evidence at Trial, §§ 2041-2042, pp. 2000-2002.) ▇ Failure to make an adequate offer of proof precludes consideration of the alleged error on appeal. (*Helfend* v. *Southern Cal. Rapid Transit Dist.* (1970) 2 Cal.3d 1, 17-18 [84 Cal.Rptr. 173, 465 P.2d 61, 77 A.L.R.3d 398]; *Pugh* v. *See's Candies, Inc.* (1988) 203 Cal.App.3d 743, 758 [250 Cal.Rptr. 195].)

▇ In the case before us, the issues concerning the admissibility of the proposed testimony were raised by the Department's written motion *in limine*, which stated that the Department had not been provided with a description or results of any tests administered to Father. However, the Department anticipated in its motion that psychological evaluations, various sexual inventory and diagnostic tests, and the arousal test might be offered. Father did not file any written opposition to the motion nor did he make a written offer of proof. At the inception of the jurisdictional hearing, the motion *in limine* was argued, and Father stated that the tests upon which the expert proposed to testify included the arousal test and "some 33 standardized tests that were conducted." However, this "voluminous number" of tests was not described in any detail.

Based upon this meager showing in support of the proffered testimony, we can draw several conclusions. First, there is authority that the arousal test (penile plethysmograph) is not yet accepted in the scientific community as a reliable means of diagnosing sexual deviancy. (*People* v. *John W., supra,* 185 Cal.App.3d 801, 804-806.) Father admitted at argument that this test would be required to meet *Kelly/Frye* standards, and he was not prepared to submit to the court that it does. His theory was, however, that the expert testimony would be based not only on the arousal test, but also on substantial other tests and information, together providing an adequate basis for the expert's opinion. This showing falls far short of the requirements of Evidence Code section 801, subdivision (b), "that the matter underlying an expert's opinion be 'of a type that reasonably may be relied upon by an expert in forming an opinion upon the subject to which his testimony relates.' Thus, there must be

some showing that the material on which the expert bases his or her opinion . . . is reliable." (*People* v. *Ruiz*, *supra*, 222 Cal.App.3d 1241, 1245-1246.) Moreover, the record does not support Father's contention that he was not afforded any opportunity to make such a foundational showing; he made no significant effort to do so.

Moving on to the matter of the 33 standardized tests about which Father sought to have the expert testify, we first note that *People* v. *Stoll*, *supra*, 49 Cal.3d 1136, 1154-1157, makes it clear that at least in criminal cases, there is no need for the proponent of the evidence to make a *Kelly/Frye* showing of scientific reliability concerning such psychological testimony based upon standardized written personality tests and patient interviews. There is no reason why the same rule should not apply in the dependency context. (See fn. 5, *ante*.) However, neither the trial court nor this court has been given any meaningful information about the nature, content, or import of these various standardized tests. Were they standardized to a normal or a deviant population? (See *People* v. *John W.*, *supra*, 185 Cal.App.3d 801, 804-805; *People* v. *Ruiz*, *supra*, 222 Cal.App.3d 1241, 1245-1246.) Are they the sort on which an expert in the field normally relies? (*Ibid.*) To what extent were they based on proof of sibling abuse? (§ 355.1, subd. (b); *In re Dorothy I.*, *supra*, 162 Cal.App.3d at pp. 1158-1159.) We do not know.

■ "An offer of proof must consist of material that is admissible, it must be specific in indicating the purpose of the testimony, the name of the witness and the content of the answer to be elicited." (*Semsch* v. *Henry Mayo Newhall Memorial Hospital* (1985) 171 Cal.App.3d 162, 167 [216 Cal.Rptr. 913].) The burden was on Father to make known to the court the substance, purpose, and relevance of the evidence. (Evid. Code, §§ 354, subd. (a), 403, subd. (a), 801, subd. (b).) ■ Before an appellate court can knowledgeably rule upon an evidentiary issue presented, it must have an adequate record before it to determine if an error was made. For this purpose, we are limited to reviewing the matters appearing in the record. (*Grimshaw* v. *Ford Motor Co.* (1981) 119 Cal.App.3d 757, 792 [174 Cal.Rptr. 348].) ■ Because of the uncertainty in the record concerning the nature of the proferred evidence, we cannot say that the juvenile court erred in excluding it. (*Semsch* v. *Henry Mayo Newhall Memorial Hospital*, *supra*, 171 Cal.App.3d 162, 168-169.)

■ Moreover, even though the juvenile court at the jurisdictional hearing indicated that psychological evaluations were not routinely considered regarding future risk to the children at the jurisdictional stage (thus drawing a distinction between jurisdiction and disposition), Father failed to make a renewed effort to obtain the admission of this expert psychological evidence

at the dispositional stage of the proceedings, where the issues were somewhat different. The general principle set forth in *In re Dorothy I.*, *supra*, 162 Cal.App.3d 1154, 1159, that character evidence regarding sibling abuse is useful to aid the court in dependency actions to promote the future well-being of a minor, is particularly well-taken at the dispositional or placement stage of the proceedings, as the Department recognizes in its brief. Due to Father's failure to pursue the issue, any claim he had that the expert psychological testimony should have been admitted at the dispositional stage of the proceeding has been waived. (*In re Heidi T.* (1978) 87 Cal.App.3d 864, 876 [151 Cal.Rptr. 263].)

For all the reasons stated above, we conclude the juvenile court did not err in excluding the proferred expert testimony.

## II*

. . . . . . . . . . . . . . . . . . . . . . . . . . . .

## DISPOSITION

The orders are affirmed.

Todd, Acting P. J., and Benke, J., concurred.

Appellant's petition for review by the Supreme Court was denied September 16, 1992.

---

*See footnote 1, *ante*, page 433.